| | |
|---|---|
| WAYNE MEDICAL CENTER PROPERTY OWNERS ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, <br><br> Defendant. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

**NOW COMES** Plaintiff, by and through undersigned counsel, to complain of the Defendant by alleging and saying as follows:

## PARTIES

1. Plaintiff is a North Carolina corporation. At all times relevant to this Complaint, Plaintiff owned and operated a complex of multi-unit office park-style commercial buildings located in Goldsboro, North Carolina, 27534 (hereinafter, the "Property").

2. Defendant Selective Insurance Company of South Carolina (hereinafter, the "Defendant") is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in the State of New Jersey. At all times relevant hereto, the Defendant was transacting substantial business in the State of North Carolina.

## JURISDICTION & VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. The Defendant is subject to personal jurisdiction in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

6. At the times relevant hereto, the Property was insured by Defendant under an insurance policy, assigned policy number S 2453050 (hereinafter the "Policy") (Exhibit 1).

7. Plaintiff timely paid all premiums for the Policy, and the Policy was in full force and effect on March 27, 2021.

8. The Policy provided replacement cost coverage to Covered Property, including the Property, caused by or resulting from any Covered Causes of Loss, including wind and hail.

9. On or about March 27, 2021, a wind and hailstorm passed over the Property. The roofs and gutters and downspouts, among other parts of the Property, sustained extensive damage from the wind and hailstorm.

10. Following the storm, Plaintiff submitted an insurance claim to Defendant (subsequently assigned Claim No. 22303222 by Defendant; hereinafter "the Claim") for hail and wind damage to the Property and its roofs.

11. In connection with the Claim, Plaintiff retained Intercoastal Public Adjusters ("Intercoastal") to assist with the investigation and valuation of the Claim. Intercoastal assisted

the insured in submitting a Sworn Statement in Proof of Loss to Defendant on August 10, 2022. (Exhibit 2). Over the course of the Claim, on Plaintiff's behalf, Intercoastal also obtained an inspection of the property by Mission Consulting and Estimating (Exhibit 3) confirming the damage to the Property was consistent with the timing and weather conditions alleged herein. The report and estimate prepared by Intercoastal placed the then estimated value of the loss at $285,930.54, (Exhibit 4), while the report and estimate entered by Defendant on or about the same time placed the total cost of replacement at a mere $663.27. (Exhibit 5)

12. On or about January 25, 2022, Defendant's adjuster emailed Plaintiff to notify them that coverage was extended for the loss and payment *had* been approved, but that it was only for the aforementioned sum of $663.27, over $285,000 short of the damages actually caused by the storm.

13. As a result, Plaintiff invoked the appraisal provision of the insurance policy to obtain a binding resolution of the dispute of the amount of loss without having to resort to litigation, naming their appraiser and notifying Defendant of its 20-day window within which to designate its own appraiser. Defendant timely designated their appraiser, the appraisal process commenced, Defendant participated in the appraisal process, and the appraisal process concluded on March 8, 2024, when the Defendant's own appraiser signed an award setting the amount of the loss for the Claim at $352,445.06. (See Exhibit 6). Defendant knowingly allowed and participated in allowing the appraisal panel to determine the full scope and extent of necessary repairs to the Property as a part of determining the amount of loss.

14. A contended mistake of fact by the appraisal panel is not grounds to refuse to pay an appraisal award. *Cyclone Roofing Co., Inc. v. LaFave Co.*, 312 N.C. 224, 236 (1984); *see also Patel v. Scottsdale Ins. Co.*, 221 N.C. App. 476, 484 (2012). An appraisal award "settle[s] the

matter in controversy, and thus save[s] the expense of litigation," and "[i]f a mistake be a sufficient ground for setting aside an award, it opens the door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party." *Cyclone Roofing Co., Inc. v. LaFave Co.*, 312 N.C. 224, 236 (1984); *see also Patel v. Scottsdale Ins. Co.*, 221 N.C. App. 476, 484 (2012). Accordingly, it is well-establish in North Carolina that where "contractual appraisal provisions are followed, an appraisal award is presumed valid and is binding absent evidence of fraud, duress, or other impeaching circumstances." *Enzor v. N.C. Farm Bureau Mut. Ins. Co.*, 123 N.C. App. 544, 545–46, 473 S.E.2d 638, 639 (1996); *see, also N.C. Farm Bureau v. Harrell*, 148 N.C. App. 183, 185, 557 S.E.2d 580, 581 (2001), *rev. denied*, 356 N.C. 165, 568 S.E.2d 606 (2002); *McMillan v. State Farm Fire and Casualty Co.*, 93 N.C. App. 748, 751–52, 379 S.E.2d 88, 90 (1989).

15. Nevertheless, without asserting or pointing to any contended fraud, duress or impeaching circumstances, on March 20, 2024, Defendant's adjuster, Michael Zymantas, preemptively contacted the insured's representative, Patrick Lands at InterCoastal, and notified him that Defendant was not going to pay the appraisal award. Instead, he contended that the appraisal panel made mistakes in their determination of the amount of loss. He further made an attempt to settle the Claim for approximately $169,000 at this time, an amount far below that set by the appraisal award and Defendant's own appraiser.

16. Plaintiff notes, and does not contest, that Defendant reserves the right to deny the Claim and to litigate over coverage issues, but that has not occurred in this case. Defendant has acknowledged that the loss occurred and is covered, and Defendant never raised or reserved any coverage issues over the course of the Claim. Nevertheless, in violation of the Policy's terms and conditions, Defendant is now unilaterally attempting to discredit the validity of the appraisal award

by contending that the panel made mistakes, in a manner inconsistent with applicable North Carolina substantive law.

17. The statute of limitations to preserve recovery upon the Claim runs on March 27, 2024. Prior to the initiation of this litigation, Mr. Lands, on behalf of Plaintiff, contacted Mr. Zymantas to request a tolling agreement to allow time for the parties to work through their disagreement and exchange their respective positions. Defendant refused such a tolling agreement – knowingly leaving Plaintiff in a position where they had to hire counsel and initiate this litigation or settle the Claim for a drastically lower amount than the Claim's value.

## CLAIM FOR RELIEF
### Breach of Contract

18. Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

19. The Policy is and was a valid and enforceable contract between Plaintiff and Defendant.

20. Defendant breached this contract by failing to provide the benefits, coverages and payments due thereunder to Plaintiff.

21. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered monetary damages in an amount equal to the payments due under the Policy, as well as consequential, ensuing and other forms of damages as may be proven at trial, and Defendant is due and owing to Plaintiff for the same.

## SECOND CLAIM FOR RELIEF
### Bad Faith Refusal To Settle

22. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

23. The Defendant's conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

24. Specifically, the Defendant (1) refused to pay the full amount of the loss after recognition of a valid claim (and even after the amount of the Claim was conclusively established by its own appraiser), (2) engaged in bad faith through wrongful purpose or intent to save money under its coverages by attempting to leverage its power for a settlement of the Claim at less than the appraisal award or the Claim's actual value, and (3) engaged in aggravating conduct, through evidencing a reckless and wanton disregard of Plaintiff's rights under the Policy as detailed herein.

25. As a proximate result of the Defendant's bad faith breach of the contract, Plaintiff is entitled to recover punitive damages from the Defendant for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

## THIRD CLAIM FOR RELIEF
### Unfair Claims Settlement Practices
### And Unfair & Deceptive Trade Practices

26. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

27. Upon information and belief, the conduct of Defendant constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15(11), and Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes, including, but not limited to:

i. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

ii. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

iii. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

iv. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amount actually due to such insured;

v. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

vi. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

vii. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration; and

viii. Other particulars as will be adduced through further investigation, discovery, or at trial.

28. Moreover, with Defendant's actual and/or constructive knowledge of Plaintiff's damages and coverage therefore, Defendants unfairly and unlawfully failed to promptly investigate, adjust and pay the Claim in violation of North Carolina law, N.C.G.S. § 58-63, and

Chapter 75 of the North Carolina General Statutes. The factually specific statutory violations, in part, are outlined above and said violations, in part, correspond to violations of provisions of North Carolina law found from N.C.G.S. § 58-63-15(11)(a) through N.C.G.S. § 58-63-15(11)(n).

29. Defendant's above-described conduct, in violation of N.C.G.S. § 58-63-15(11), is a per se violation of N.C.G.S. § 75-1.1.

30. The conduct of the Defendant directly violates N.C.G.S. § 75-1.1 in that its acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to Plaintiff and was an inequitable assertion of its power and position over Plaintiff under the circumstances.

31. Defendant's unfair and deceptive trade acts or practices were in or affecting commerce.

32. As a proximate result of Defendant's unfair claim settlement practices and unfair and deceptive trade acts and practices, Plaintiff has suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

33. Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble its damages.

34. Pursuant to N.C.G.S. § 75-16.1, Plaintiff is entitled to an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiff prays that the Court enter Judgment as follows:

1. That Plaintiff has and recover of Defendant its damages for breach of contract to be proven at trial;
2. That Plaintiff has and recover of Defendant treble damages or punitive damages at Plaintiff's election;
3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiff's attorney's fees, against Defendant;

5. That all issues of fact be tried by a jury; and

6. That Plaintiff has such other and further relief as the Court may deem just and proper.

This the 25th day of March, 2024.

                            **HOWARD STALLINGS LAW FIRM**

                        By: /s/ Robert H. Jessup
                            Robert H. Jessup (State Bar No. 42945)
                            Lee A. Rodio (State Bar No. 61250)
                            Post Office Box 12347
                            Raleigh, North Carolina 27607
                            Telephone: (919) 821-7700
                            rjessup@howardstallings.com
                            lrodio@howardstallings.com
                            *Attorneys for Plaintiff*